UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 23 Cr. 420 (AS) |
| ROBERT PIARO, | |
| Defendant. | |

**THE GOVERNMENT'S OMNIBUS MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS TO DISMISS THE
INDICTMENT, FOR A BILL OF PARTICULARS, FOR DISCLOSURE OF GRAND
JURY MINUTES, AND FOR LEAVE TO FILE SUBSEQUENT MOTIONS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jane Kim
Rebecca Dell
Daniel H. Wolf
Assistant United States Attorneys
    *Of Counsel*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT BACKGROUND ........................................................................................... 3

   I. The Indictment ............................................................................................................ 3

   II. The Defendant's Admissions to Law Enforcement ................................................. 9

   III. The Government's Discovery Productions and Other Materials Provided to
the Defendant .................................................................................................................. 10

DISCUSSION .................................................................................................................... 11

   I. THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD
BE DENIED .................................................................................................................... 11

      A. Applicable Law ................................................................................................ 12

         1. The Elements of Mail and Wire Fraud ....................................................... 12

         2. Sufficiency .................................................................................................. 13

         3. Duplicity ..................................................................................................... 14

         4. Selective Prosecution ................................................................................. 15

      B. Discussion ........................................................................................................ 16

         1. The Indictment Is Sufficient ...................................................................... 16

         2. The Counts Are Not Duplicitous and the Defendant Is Not Prejudiced ..... 29

         3. The Government's Prosecution of the Defendant Is Proper ........................ 32

   II. THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD
BE DENIED .................................................................................................................... 33

      A. Applicable Law ................................................................................................ 34

      B. Discussion ........................................................................................................ 36

   III. THE DEFENDANT'S MOTION FOR GRAND JURY TESTIMONY AND
EXHIBITS SHOULD BE DENIED ............................................................................... 39

      A. Applicable Law ................................................................................................ 39

      B. Discussion ........................................................................................................ 40

   IV. THE DEFENDANT'S MOTION FOR LEAVE TO FILE SUBSEQUENT MOTIONS
SHOULD BE DENIED WITHOUT PREJUDICE ........................................................ 42

CONCLUSION ................................................................................................................. 43

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Baynes v. Ruderfer*,
   234 F. Supp. 3d 574 (S.D.N.Y. 2017) ................................................................. 40
*Bourne v. United States*,
   No. 21-2497, 2023 WL 3102700 (2d Cir. 2023) ........................................... 39, 40
*Boyce Motor Lines v. United States*,
   342 U.S. 337 (1952) ................................................................................... 13, 21
*Ciminelli v. United States*,
   143 S. Ct. 1121 (2023) ...................................................................................... 23
*Douglas Oil Co. of Calif. V. Petrol Stops Nw.*,
   441 U.S. 211 (1979) ................................................................................... 39, 40
*Hamling v. United States*,
   418 U.S. 87 (1974) ..................................................................................... 29, 31
*Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*,
   538 U.S. 600 (2003) ............................................................................. 19, 20, 21
*In re Biaggi*,
   4787 F. 2d 489 (2d Cir. 1973) ........................................................................... 39
*In re Grand Jury Investigation of Cuisinarts, Inc.*,
   665 F.2d 24 (2d Cir. 1981) ............................................................................... 39
*Neder v. United States*,
   527 U.S. 1 (1999) ............................................................................ 12, 13, 22, 26
*Rehberg v. Paulk*,
   566 U.S. 356 (2012) ......................................................................................... 39
*United States v. Al Jibori*,
   90 F.3d 22 (2d Cir. 1996) ................................................................................. 32
*United States v. Alacri*,
   968 F.2d 1512 (2d Cir. 1992) ........................................................................... 15
*United States v. Alfonso*,
   143 F.3d 772 (2d Cir. 1998) ....................................................................... 13, 31
*United States v. Armstrong*,
   517 U.S. 456 (1996) ......................................................................................... 15
*United States v. Autuori*,
   212 F.3d 105 (2d Cir. 2000) ............................................................................. 12
*United States v. Avenatti*,
   432 F. Supp. 3d 354 (S.D.N.Y. 2020) .............................................................. 14
*United States v. Avenatti*,
   433 F. Supp. 3d 552 (S.D.N.Y. 2020) .............................................................. 33
*United States v. Bankman-Fried, No.*
   22 Cr. 673 (LAK), 2023 WL 4194773 (S.D.N.Y. June 27, 2023) ...................... 25

*United States v. Bejasa,*
  904 F.2d 137 (2d Cir. 1990) ................................................. 42
*United States v. Brewster,*
  No. 19 Cr. 833 (SHS), 2021 WL 3423521 (S.D.N.Y. Aug. 5, 2021) ...................... 23, 26, 27
*United States v. Bronson,*
  No. 05 Cr. 714 (NGG), 2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007) ............... 28
*United States v. Chen,*
  378 F.3d 151 (2d Cir. 2004) ................................................ 35
*United States v. Coppa,*
  267 F.3d 132 (2d Cir. 2001) ................................................ 42
*United States v. Culligan,*
  No. 04 Cr. 305A (RJA), 2007 WL 3232484 (W.D.N.Y. Nov. 1, 2007) ................ 27
*United States v. Dawkins,*
  999 F.3d 767 (2d Cir. 2021) ................................................ 13
*United States v. De La Pava,*
  268 F.3d 157 (2d Cir. 2001) ................................................ 14
*United States v. DiScala,*
  No. 14 Cr. 399, 2018 WL 1187394 (E.D.N.Y. Mar. 6, 2018) ........................29, 30
*United States v. Earls,*
  No. 03 Cr. 0364 (NRB), 2004 WL 350725 (S.D.N.Y. Feb. 25, 2004) ........... 37, 38
*United States v. Facciolo,*
  753 F. Supp. 449 (S.D.N.Y. 1990) ......................................... 34
*United States v. Fares,*
  978 F.2d 52 (2d Cir. 1992) ................................................ 16, 32
*United States v. Fatico,*
  603 F.2d 1053 (2d Cir. 1979) .............................................. 31
*United States v. Ferrarini,*
  9 F. Supp. 2d 284 (S.D.N.Y. 1998) ........................................ 37
*United States v. Fishbein,*
  No. 21 Cr. 296 (PAC), 2022 WL 1188424 (S.D.N.Y. Apr. 21, 2022) ............... 22
*United States v. Gall,*
  No. 95 Cr. 98 (AHN), 1996 WL 684404 (D. Conn. Aug. 12, 1996) .................... 38
*United States v. Gatto,*
  295 F. Supp. 3d 336 (S.D.N.Y. 2018) ..................................... 28
*United States v. Goldberg,*
  756 F.2d 949 (2d Cir. 1985) ............................................... 1, 13
*United States v. Gottlieb,*
  493 F.2d 987 (2d Cir. 1974) ............................................... 35
*United States v. Henry,*
  861 F. Supp. 1190 (S.D.N.Y. 1994) ....................................... 34, 35
*United States v. Klein,*
  476 F.3d 111 (2d Cir. 2007) ............................................... 25, 26

*United States v. Mahabub*,
    No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ................................. 35

*United States v. Mandell*,
    710 F. Supp. 2d 368 (S.D.N.Y. 2010) .................................................................. 38

*United States v. Margiotta*,
    646 F.2d 729 (2d Cir. 1981) ....................................................................... 29, 31

*United States v. Moloney*,
    287 F.3d 236 (2d Cir. 2002) ............................................................................. 29

*United States v. Morgan*,
    690 F. Supp. 2d 274 (S.D.N.Y. 2010) ................................................................. 42

*United States v. Motta*,
    No. 15 Cr. 173 (NSR), 2015 WL 4692462 (S.D.N.Y. Aug. 6, 2015) ................................... 18

*United States v. Murgio*,
    209 F. Supp. 3d 698 (S.D.N.Y. 2016) ................................................................. 23

*United States v. Ohle*,
    678 F. Supp. 2d 215 (S.D.N.Y. 2010) ................................................................. 28

*United States v. Olmeda*,
    461 F.3d 271 (2d Cir. 2006) ................................................................... 29, 30, 32

*United States v. Percoco*,
    No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) ................................... 38

*United States v. Procter & Gamble Co.*,
    356 U.S. 677 (1958) .................................................................................... 39

*United States v. Regent Office Supply Co.*,
    421 F.2d 1174 (2d Cir. 1970) ........................................................................... 24

*United States v. Riccio*,
    43 F. Supp. 3d 301 (S.D.N.Y. 2014) ................................................................... 22

*United States v. Runner*,
    No. 18 Cr. 578 (JS), 2023 WL 3727532 (E.D.N.Y. May 30, 2023) ..................................... 25

*United States v. Rutigliano*,
    790 F.3d 389 (2d Cir. 2015) ............................................................................. 27

*United States v. Salazar*,
    485 F.2d 1272 (2d Cir. 1973) ....................................................................... 34, 35

*United States v. Samsonov*,
    No. 07 Cr. 1198 (CM), 2009 WL 176721 (S.D.N.Y. Jan. 23, 2009) ............................... 35, 37

*United States v. Sanders*,
    211 F.3d 711 (2d Cir. 2000) ............................................................................. 15

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007) .............................................................................. 24

*United States v. Sindone*,
    No. 01 Cr. 517 (MBM), 2002 WL 48604 (S.D.N.Y. Jan. 14, 2002) .................................... 36

*United States v. Stavroulakis*,
    952 F.2d 686 (2d Cir. 1992) ....................................................................... 13, 17

*United States v. Stewart*,
    151 F. Supp. 2d 572 (E.D. Pa. 2001) ...................................................................... 27
*United States v. Stringer*,
    730 F.3d 120 (2d Cir. 2013) ..................................................................... 14, 17
*United States v. Sturdivant*,
    244 F.3d 71 (2d Cir. 2001) ................................................................................. 14
*United States v. Szur*,
    No. 97 Cr. 108 (JGK), 1998 WL 132942 (S.D.N.Y. Mar. 20, 1998) .................... 28
*United States v. Taylor*,
    707 F. Supp. 696 (S.D.N.Y. 1989) ..................................................................... 37
*United States v. Torres*,
    901 F.2d 205 (2d Cir. 1990) ....................................................... 35, 37, 40
*United States v. Triana-Mateus*,
    No. 98 Cr. 958 (SWK), 2002 WL 562649 (S.D.N.Y. Apr. 15, 2002) .................. 34
*United States v. Tutino*,
    883 F.2d 1125 (2d Cir. 1989) ..................................................................... 15, 29
*United States v. Vilar*,
    729 F.3d 62 (2d Cir. 2013) ....................................................................... 15, 30
*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) ................................................................................. 34
*United States v. Wedd*,
    993 F.3d 104 (2d Cir. 2021) ............................................................................... 14
*United States v. Wey*,
    No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ............... 22, 38
*United States v. Zandstra*,
    No. 00 Cr. 209 (RWS), 2000 WL 1368050 (S.D.N.Y. Sept. 20, 2000) .............. 18
*United States v. Zeitlin*,
    No. 23 Cr. 519 (LAK), Dkt. 60 (S.D.N.Y. Jan. 4, 2024) ............................. passim
*Wayte v. United States*,
    470 U.S. 598 (1985) .......................................................................................... 16
*Wong Tai v. United States*,
    273 U.S. 77 (1927) ............................................................................................ 35

**Statutes**

18 U.S.C. § 1341 ................................................................................................ passim
18 U.S.C. § 1343 ................................................................................................ passim
18 U.S.C. § 1349 ................................................................................................ passim
18 U.S.C. § 1346 ........................................................................................................ 12
18 U.S.C. § 1348 ........................................................................................................ 22
18 U.S.C. § 2326 ................................................................................................ passim
18 U.S.C. § 3282 ........................................................................................................ 28
18 U.S.C. § 3500 .................................................................................................. 39, 42

## Rules

Fed. R. Crim. P. 6 ................................................................................................ 39
Fed. R. Crim. P. 7 ........................................................................................... passim
Fed. R. Crim. P. 8 ................................................................................................14
Fed. R. Crim. P. 12 ..............................................................................................14
Fed. R. Crim. P. 16 .............................................................................................. 42

## Other

Indictment 23 Cr. 420 (AS) ............................................................................ passim
Jury Charge in *United States v. Whitehead*,
    S1 22 Cr. 692 (LGS) (S.D.N.Y. Mar 7, 2024) ...............................................12
Jury Charge in *United States v. Adelekan*,
    No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021) ..........................................12
Jury Charge in *United States v. Avenatti*,
    No. S1 19 Cr. 373 (PGG) (S.D.N.Y. Jan. 29, 2020) ....................................12
Sand, *et al.*, *Modern Federal Jury Instructions* ....................................................12
*United States v. Zeitlin*,
    No. 23 Cr. 419 (LAP), Dkt. 46 (S.D.N.Y. Nov. 30, 2023) ........................... 19, 23

## PRELIMINARY STATEMENT

The Government respectfully submits this omnibus memorandum of law in opposition to the defendant's pretrial motions, which should be denied in their entirety.[1]  The defendant's motions rest on speculation and a false narrative that attempts to paint the defendant as a blameless dupe and the Government as "criminalizing an entire industry" of fundraising that involves "high overhead costs."  (Def. Mot. at 35).  The defendant, however, ignores that the Court must "accept as true all of the allegations in the indictment" and not consider "[c]ontrary assertions of fact by the defendant[]."  *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).  As alleged in Indictment 23 Cr. 420 (AS) (the "Indictment"), the defendant created, operated, and controlled at least four political action committees (the "Piaro PACs"), raised and controlled over $27 million in donations to his PACs, made misrepresentations to donors through websites, mailings, and fundraising calls, and largely admitted the above in his voluntary statements to law enforcement made in the presence of counsel.  The defendant made false promises to donors and potential donors about what his PACs would do with their donations.  For example, the defendant misrepresented that one of his PACs would "conduct research" on breast cancer and that another PAC would "acquire affordable housing" for veterans.  The defendant, of course, will have the opportunity to challenge the allegations in the Indictment at trial and those disputes will be resolved by the jury.

---

[1] "Def. Mot." refers to the defendant's memorandum of law in support of his motions to dismiss the Indictment, for a bill of particulars, and for leave to file subsequent motions (Dkt. 35), and "Def. GJ Mot." refers to the defendant's memorandum of law in support of his motion for disclosure of grand jury transcripts (Dkt. 32).  Citations to the defendant's motions refer to the ECF page number rather than the document's page number.

Setting aside the defendant's premature challenges to the Indictment's factual allegations, the defendant's four motions each are meritless and should be denied.

First, the defendant's motion to dismiss the Indictment should be denied because the Indictment is entirely sufficient.  The Indictment properly alleges the elements of the charged offenses, the two counts are not duplicitous, and the Government's prosecution of the defendant is proper.

Second, the defendant's motion for a bill of particulars should be denied as neither warranted nor necessary because the Government has already provided the defendant with ample notice of the crimes with which he is charged, including through the 12-page speaking Indictment, several lengthy and detailed search warrant affidavits, a 20-page report of his voluntary interview with law enforcement and in the presence of his counsel, and substantial discovery materials accompanied by a detailed index, among other things.

Third, the defendant's motion for grand jury material should be denied because he has failed to carry his burden of showing a "particularized need" that outweighs the public's interest in grand jury secrecy and the protection of witness identities and statements, nor has he tailored his request to address a specific purported need.

Fourth, the defendant's motion for leave to file additional motions should be denied because he should not have the unfettered ability to file untimely motions that could burden the Court and the Government, and potentially introduce unnecessary delays in the case's progression.

2

Instead, the Court should decide whether it will consider any potential future pretrial motions on a case-by-case basis, depending on the circumstances.[2]

## RELEVANT BACKGROUND

### I.     The Indictment

On August 15, 2023, a grand jury sitting in the Southern District of New York returned the Indictment, charging the defendant in two counts with: (1) wire fraud in connection with telemarketing, in violation of 18 U.S.C. §§ 1343, 1349, 2326, and 2 (Count One); and (2) mail fraud in connection with telemarketing, in violation of 18 U.S.C. §§ 1341, 1349, 2326, and 2 (Count Two).   (Indictment ¶¶ 16-19).[3]   In addition to its statutory allegations, the 12-page Indictment included detailed factual allegations relating to the defendant's fraud scheme.

As alleged in the Indictment, from at least in or about February 2017 through at least in or about December 2022, the defendant established, controlled, and operated four political action committees (*i.e.*, the Piaro PACs): Americans for the Cure of Breast Cancer (the "Breast Cancer PAC"), the Association for Emergency Responders & Firefighters (the "Emergency Responders PAC"), the US Veterans Assistance Foundation (the "Veterans Assistance PAC"), and Standing by Veterans (the "Standing by Veterans PAC").   (*Id.* ¶¶ 1, 4).   The defendant established each of

---

[2] The telemarketer referenced in the Indictment as "Individual-1" was charged in Indictment 23 Cr. 419 (LAK), with wire fraud and other related offenses.   In that case, the defendant filed somewhat similar pretrial motions to dismiss and for a bill of particulars, and Judge Kaplan denied those motions on January 4, 2024.  *United States v. Zeitlin*, No. 23 Cr. 419 (LAK), Dkt. 60 (Jan. 4, 2024).

[3] On August 17, 2023, the defendant was arrested in the Eastern District of Wisconsin.   On the same day, the Indictment was unsealed.   (Dkt. 2).

the Piaro PACs with names and purported missions that indicated they were intended to advance certain causes, such as combatting breast cancer or supporting firefighters, emergency responders, or veterans. (*Id.* ¶ 1). The defendant raised over $28 million from hundreds of thousands of donors nationwide through, among other things, false statements and misrepresentations to donors about how donor contributions would be spent. (*Id.*).

The defendant, as treasurer of the Piaro PACs, made and authorized others to make fraudulent claims about how the Piaro PACs had spent and would spend donor contributions. (*Id.*). For example, at the defendant's direction, misrepresentations were made to donors that the Piaro PACs would, among other things, advance specific legislation, educate lawmakers, and conduct and fund research—when the defendant did not and did not intend to follow through on these representations. (*Id.*). The defendant made and authorized false and misleading representations to donors over the course of approximately five years through, among other things, call scripts to be used by telemarketers to contact potential donors, mail sent to potential donors, and websites for the Piaro PACs. (*Id.*). Examples of the defendant's misrepresentations are discussed below by PAC.

<u>The Breast Cancer PAC</u>

From in or about 2018 through January 2020, the defendant raised approximately $2 million from donors to the Breast Cancer PAC by, among other things, making misrepresentations to donors. (*Id.* ¶¶ 5-6). In mail sent to potential donors and on the Breast Cancer PAC's website, both of which contained language written or approved by the defendant, the defendant made false and misleading representations to donors, including that the Breast

Cancer PAC: (1) "funds, conducts research, shares expert information, supports patients, and spread[s] the word of prevention" of breast cancer; and (2) "advocate[s] to increase funding for support services for those working through breast cancer and its treatment" and "push[es] legislators and lawmakers to step up for [breast cancer support organizations]." (*Id.* ¶¶ 5(a), (b)). The defendant also falsely represented to donors that donations would "bring your voice to the halls of our federal, state, and local policy makers," and "allows [the PAC] to spend significant time and money educating lawmakers about current bills which help fund research and determine policies that affect breast cancer patients." (*Id.* ¶¶ 5(c), (d)). Notwithstanding the representations made to donors about the Breast Cancer PAC's purported activities and use of donations, the Breast Cancer PAC only made one charitable donation of approximately $10,000 to a breast cancer charity in or about May 18, 2018. (*Id.*)

The Emergency Responders PAC

From in or about 2017 through 2022, the defendant raised approximately $7 million from donors to the Emergency Responders PAC by, among other things, making misrepresentations to donors. (*Id.* ¶¶ 5-6). In mail sent to potential donors and on the Emergency Responders PAC website, both of which contained language written or approved by the defendant, the defendant made false and misleading representations to donors, including that the Emergency Responders PAC: (1) used donations to "actively seek out and educate law makers so that together we can honor the service of First Responders"; (2) "will promote public awareness of the needs of emergency responders, advocate for legislation at all levels of government for the general welfare of emergency responders, and ensure that they have access to the most up to date equipment

possible"; and (3) is "actively engaged in creating strong legislation to severely punish any person convicted of endangering the life of an Emergency Responder while in the performance of their duties." (*Id.* ¶¶ 7(a)-(c)). Notwithstanding the representations made to donors about the PAC's purported activities and use of donations, the Emergency Responders PAC spent only $10,000 on mailers to support a single candidate for federal office in or about August 2022, made three charitable donations totaling approximately $30,000, in or about 2018 and 2019, and did not otherwise materially fulfill the representations made to donors. (*Id.* ¶ 8).

<u>The Veterans Assistance PAC</u>

From in or about 2017 through 2022, the defendant raised approximately $15.4 million from donors to the Veterans Assistance PAC by, among other things, making misrepresentations to donors. (*Id.* ¶ 11). In mail sent to potential donors and on the Veterans Assistance PAC's website, both of which contained language written or approved by the defendant, the defendant made false and misleading representations to donors, including that the Veterans Assistance PAC: (1) "identif[ies] leaders who will back legislation and public policies that support veterans" and "work[s] to coordinate with local leaders to acquire affordable housing, educational opportunities, vocational training or job retraining"; (2) "work[s] at the local, state and federal level to educate leaders about [post-traumatic stress disorder and suicide prevention]"; and (3) "works to find politicians and community leaders at the local, state and federal level to pass legislation, make budget decisions, and create public policies that provide veterans with affordable health care, affordable housing, and further education opportunities." (*Id.* ¶¶ 10(a), (b)). The defendant further misrepresented that donations would "help" the PAC "to educate local, state, and federal leaders

so that we can create the safety net our returning vets need." (*Id.* ¶ 10(c)). Notwithstanding the representations made to donors about the Veterans Assistance PAC's purported activities and use of donations, it spent approximately $260,000 on mailers, billboards, and other advertising supporting three candidates for federal office in 2018, 2020, and 2022, made two donations in 2018 totaling approximately $350,000 to a PAC dedicated to electing members of a particular political party to the House of Representatives, made two donations totaling $30,000 to two PACs controlled by the defendant, and did not otherwise materially fulfill the representations made to donors. (*Id.* ¶ 11).

In addition, beginning in or about 2021, in order to appear to be spending more money in support of the PAC's stated aims, the Veterans Assistance PAC began endorsing candidates during certain fundraising calls and in mail to potential donors, and then publicly reporting a portion of its fundraising costs as independent expenditures. (*Id.* ¶ 12). Through this practice, the Veterans Assistance PAC reported over $227,000 paid to certain entities as independent expenditures for such things as tech support, phone lists, and telemarketing payroll expenses. (*Id.*).

<u>Standing by Veterans PAC</u>

From in or about 2017 through 2022, the defendant raised over $3.4 million from donors to the Standing by Veterans PAC. In mail sent to potential donors and on the Standing by Veterans PAC's website, both of which contained language written or approved by the defendant, the defendant made false and misleading representations to donors, including that the Standing by Veterans PAC: (1) "identif[ies] candidates and current lawmakers at the federal, state, and local level that will support proactive changes for veterans," such that "[a] major piece of [the PAC's]

work is advocating for legislation that will play a part in reducing wait times for VA compensation claims and medical appointments"; and (2) "advocate[s] for legislation to benefit and support veterans," and is "currently encouraging lawmakers to fund improvements to the Department of Veterans Affairs." (*Id.* ¶¶ 13(a), (c)). The defendant also misrepresented that donations would "help" the PAC "reach out to even more lawmakers and advocate not only for improvements at the VA but also in communities around the country." (*Id.* ¶ 13(b)). Notwithstanding the representations the defendant made to donors about the Standing by Veterans PAC's purported activities and use of donations, the PAC made no contributions in furtherance of that mission and made only a handful of charitable donations, including a donation of approximately $20,000 in or about September 2018 to a veterans' charity founded by the defendant, and did not otherwise materially fulfill the representations made to donors.

Additionally, beginning in or about 2021, in order to appear to be spending more money in support of the PAC's stated aims, the Standing by Veterans PAC began endorsing candidates during certain fundraising calls and in mail to potential donors, and then publicly reporting a portion of its fundraising costs as independent expenditures. (*Id.* ¶ 15). Through this practice, the Standing by Veterans PAC reported over $48,000 paid to certain entities as independent expenditures for such things as tech support, phone lists, and telemarketing payroll expenses. (*Id.*).

<u>The 100% Agreements</u>

In addition to the above misrepresentations, from in or about 2017 through 2018, the defendant made additional misrepresentations to potential donors of certain of the Piaro PACs. (*Id.* ¶ 2). Specifically, the defendant entered into an agreement with a telemarketer that certain of

8

the Piaro PACs would receive an advance of approximately $30,000, and in exchange, 100 percent of the money subsequently raised by the telemarketer for those PACs for a certain time period would be kept by the telemarketer (the "100% Agreements"). (*Id.*). In other words, when the 100% Agreements were in effect, none of the money raised by the Piaro PACs were going to the respective PAC; instead, all donations went to the telemarketer, and representations made by the Piaro PACs to donors that donations would be used to further a cause were false and misleading. (*Id.*).

## II.     The Defendant's Admissions to Law Enforcement

On or about November 2, 2022, the defendant participated in a voluntary interview with the Government in Milwaukee, Wisconsin, and in the presence of defense counsel. During the interview, among other things, the defendant admitted that he had extensive experience in the non-profit world, and had founded two non-profit organizations with which he was involved from in or about 1994 through 2016: Veterans Assistance Foundation and California Veterans Assistance Foundation. The defendant explained that he switched to PACs because they were less regulated. Specifically, unlike non-profit organizations that were required to register in every state, PACs only had to register with one agency (*i.e.*, the Federal Election Commission).

The defendant stated, in substance and in part, that he edited, managed, and approved of fundraising materials for the Piaro PACs that contained misrepresentations to donors. The defendant admitted that he prepared the fundraising scripts that were used by telemarketers to call potential donors to describe the PAC, and he signed off on what was communicated to potential donors by phone. The defendant admitted that he signed off on mailers for the Piaro PACs,

including by editing and approving the content of the mailers.  The defendant also admitted that he was responsible for the Piaro PACs' websites, any edits to the websites went through the defendant, and the defendant knew what was on each website.

The defendant further admitted that he "fell short" in meeting many of the promises he had made to donors.  The defendant acknowledged that he should not have said all of the things he wrote in these fundraising materials.[4]

## III.   The Government's Discovery Productions and Other Materials Provided to the Defendant

Since September 18, 2023, the Government has made twelve discovery productions to the defense, comprising more than a million pages, with each production accompanied by indices and organized by topic in electronic folders.  The discovery has included, among other items: search warrants and their corresponding applications, including affidavits setting forth the Government's view of the facts in a detailed narrative; documents obtained from hundreds of providers, individuals, and entities; call scripts, call recordings, and invoices created by a telemarketing call center and its related entities; full data extractions and corresponding Cellebrite reports and Axiom cases for 26 devices seized from Individual-1's residence and business property; law enforcement reports and records; photographs; PAC websites, mailers, and records; materials from the Federal

---

[4] The defendant also made false exculpatory statements during his interview.  For example, the defendant stated, in sum and substance, that he did not have the requisite intent, and that he relied on the advice and direction of others.  With respect to the 100% Agreements, the defendant initially stated that he did not sign any contracts with Individual-1.  But when he was shown a copy of one 100% Agreement, the defendant stated that he remembered the document and the entity it came from, and that the document said what it said.

Election Commission; and a 20-page report of the defendant's voluntary statements to law enforcement that were made in the presence of counsel.

The Government has also produced, as a courtesy to the defendant and to assist with his preparation for trial, excerpts of numerous witness statements on an attorney's eyes only basis. The Government intends to provide the remainder of witness statements, including statements pursuant to the Government's Jencks Act obligations, in advance of trial.

In addition, before the defendant was charged in the Indictment, the Government engaged in good faith pre-Indictment discussions with defense counsel in order to determine whether a pre-Indictment resolution could be reached. During those conversations, the defendant received information and notice about the nature and scope of the investigation, the allegations against him, and the Government's evidence.

## **DISCUSSION**

### I.   THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED

The Indictment satisfies Rule 7(c)(1) of the Federal Rules of Criminal Procedure because it provides "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P 7(c)(1), it provides a reasonably detailed description of the defendant's fraud, and it is not impermissibly duplicitous. In moving to dismiss the Indictment, the defendant attempts to prematurely litigate questions of fact to be determined at trial by the jury and he advances a fabricated "theory of criminality," as well as unsupported allegations against the Government of selective prosecution. Each of the defendant's arguments are meritless, and his motion to dismiss should be denied.

### A.    Applicable Law

### 1.    The Elements of Mail and Wire Fraud

The elements of telemarketing wire fraud are well-established and as follows: (1) there was a scheme or artifice to defraud others, or to obtain money or property, by means of false or fraudulent pretenses, representations, or promises; (2) the defendant participated in the scheme to defraud knowingly and with intent to defraud; (3) in the execution of the scheme or artifice, the defendant used—or caused one or more other people to use—interstate wires; and (4) the offense was committed in connection with the conduct of telemarketing.  18 U.S.C. §§ 1343, 2326; *see also* Sand, *et al.*, *Modern Federal Jury Instructions*, Instr. 44; Jury Charges in *United States v. Whitehead*, S1 22 Cr. 692 (LGS) (S.D.N.Y. Mar 7, 2024), *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021) (Tr. 872), *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG) (S.D.N.Y. Jan. 29, 2020) (Tr. 2335).  The first two and fourth elements of telemarketing mail fraud are the same as those for telemarketing wire fraud, and the third element is: in the execution of the scheme or artifice, the defendant used or caused the use of the mails.  18 U.S.C. §§ 1341, 2326; Sand, *et al.*, *Modern Federal Jury Instructions*, Instr. 44.

A scheme to defraud is "a plan to deprive another of money or property by trick, deceit, deception, or swindle."  18 U.S.C. § 1346.  A pretense, representation, statement, or promise is fraudulent if it was made falsely, if it contains "half truths," or if it "omit[s] to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."  *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000).  Actual reliance by the person or entity that is the intended victim of the fraud is not required.  *Neder v. United States*, 527

12

U.S. 1, 24-25 (1999) ("[Under the mail fraud statute,] the government does not have to prove actual reliance upon the defendant's misrepresentations.").

## 2. Sufficiency

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move before trial "that the indictment . . . fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). "A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Post*, 950 F. Spp. 2d 519, 527 (S.D.N.Y. 2013) (internal quotation marks and citations omitted) (citing Fed. R. Crim. P. 7(c)(1)).

Before trial, "the allegations of [an] indictment must be taken as true," *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952), as "[t]he sufficiency of the evidence" is not a matter that may be "appropriately addressed on a pretrial motion to dismiss an indictment," *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998); *see also Goldberg*, 756 F.2d at 950 (in reviewing the facial sufficiency of an indictment, "[c]ontrary assertions of fact by the defendants will not be considered"). To satisfy Rule 7(c)(1), "an indictment need do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (internal quotation marks and citation omitted); *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (same); *United States v. Zeitlin*, No. 23 Cr. 519 (LAK), Dkt. 60 at 2 (S.D.N.Y. Jan. 4, 2024). "An indictment is sufficient as long as it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,' and (2) 'enables the

defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"
*Dawkins*, 999 F.3d at 779 (quoting *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)); *see
also Zeitlin*, Dkt. 60 at 2.

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely
limited circumstances implicating fundamental rights." *United States v. Avenatti*, 432 F. Supp. 3d
354, 360 (S.D.N.Y. 2020) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001);
*see id*. at 360-361 ("[D]ismissal of charges is an 'extreme sanction,' . . . that has been upheld 'only
in very limited and extreme circumstances,' and should be 'reserved for the truly extreme cases,'
'especially where serious criminal conduct is involved.'" (internal citations omitted)).  Even in
cases involving very bare-bones charges, courts will not dismiss and indictment absent a showing
of prejudice.  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).  Where a defendant has
been given sufficient notice of the charges against him by means of, for example, discovery
materials, there will be no prejudice, and the indictment should stand.  *See*, *e.g.*, *De La Pava*, 268
F.3d at 162-63.

### 3.    Duplicity

An indictment is impermissibly duplicitous if (1) the indictment combines two or more
distinct crimes into one count, in contravention of Rule 8 of the Federal Rules of Criminal
Procedure; and (2) the defendant is thereby prejudiced.  *See United States v. Sturdivant*, 244 F.3d
71, 75 (2d Cir. 2001).  Duplicitous indictments can present three types of prejudice: (1) lack of
notice of the crime charged and its maximum penalty; (2) the possibility that a second trial on the

same charge would not be barred by the Double Jeopardy Clause; and (3) the potential uncertainty with respect to the jury's verdict and the sentencing implications of that verdict. *See id*. at 77-78.

An indictment, however, is not prejudicial merely because it charges in one count what it could have charged in several. The Second Circuit "has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013) (alteration and internal quotation marks omitted). "As long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permissible." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *see also United States v. Alacri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

### 4.    Selective Prosecution

In general, "the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate." *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000) (citations and internal quotation marks omitted); *see also United States v. Armstrong*, 517 U.S. 456, 463 (1996). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. In order to support a claim of selective prosecution, a defendant must make at least a prima facie showing both:

> (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant], he has been singled out for prosecution, and (2) that the government's discriminatory selection of [the defendant] for

15

> prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) (citing cases).  With respect to the second element of this test, where there is a concern regarding "the exercise of prosecutorial discretion" and "'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* (citing cases); *see also Wayte v. United States*, 470 U.S. 598, 611 (1985) ("The First Amendment confers no . . . immunity from prosecution."). To warrant discovery with respect to a claim of selective prosecution, a defendant must present at least "some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements." *Fares*, 978 F.2d at 59 (citing cases) (internal quotation marks omitted).  "Mere assertions and generalized proffers" are "insufficient." *Id.*

### B.   Discussion

#### 1.   The Indictment Is Sufficient

The defendant's motion to dismiss the Indictment for failure to state a claim fails because both Counts One and Two track the wire and mail fraud statutes, respectively.  In fact, the 12-page speaking Indictment goes further than what is required under Rule 7(c) and provides additional facts for the defendant's benefit.  The defendant's claims that the Indictment is "bare bones" and he has not been fairly informed of the charges against him is simply not credible (Def. GJ Mot. at 4) and it is belied by the four corners of the Indictment and his own motions.  For example, in

one motion, the defendant asks "Who are the 'Entities' and who is 'Individual-1?' Who works for these 'Individual-1 Entities?'" (*Id.*).  In contrast, in his other motion, the defendant identifies Individual-1, details his relationship with Individual-1 and his employees and entities, and discusses his understanding of how his PAC businesses operated.  (Def. Mot. at 9-10).  Nevertheless, the defendant maintains that the Indictment is insufficient for several reasons, none of which have merit.  His motion to dismiss should be denied.

> ### a.    Counts One and Two Track the Relevant Statutory Language

Dismissal of Counts One and Two is unwarranted for the simple reason that, as required under Rule 7(c), both counts track the relevant statutory language and state the approximate time and place of the crime.  These counts thus provide adequate notice to the defendant of the charges against him.  *See Stavroulakis*, 952 F.2d at 693.  The statutory allegations for Counts One and Two, moreover, incorporate by reference several preceding paragraphs that describe the scheme with detail that is more than sufficient to allow the defendant to respond to the charges and protect his rights under the Double Jeopardy Clause.  *See Stringer*, 730 F.3d at 124-25.  In particular, Counts One and Two allege, respectively, wire and mail fraud schemes that sought to "obtain[] money and property by means of false and fraudulent pretenses."  (Indictment ¶¶ 17, 19).  They allege the defendant "engaged in a scheme to defraud donors of the PIARO PACs through material misrepresentations about how donor contributions would be spent by the PIARO PACs," and "sent and received, and caused others to send and receive wire communications to and from the Southern District of New York and elsewhere," and "sent and caused others to send mail containing such

misrepresentations to donors and potential donors in the Southern District of New York and elsewhere." (*Id.*).

Contrary to the defendant's assertions, it is not necessary under Rule 7(c) for an indictment charging wire or mail fraud to identify the specific wires or mail at issue, and the omission of a list of specific wire transmissions or mail does not render the pleading of those counts insufficient. *See*, *e.g.*, *United States v. Zandstra*, No. 00 Cr. 209 (RWS), 2000 WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) (collecting cases); *United States v. Motta*, No. 15 Cr. 173 (NSR), 2015 WL 4692462, at *2 (S.D.N.Y. Aug. 6, 2015) ("A mail fraud indictment does not need to contain a detailed accounting of individual mailings."). Accordingly, under Rule 7(c), the Indictment is entirely sufficient.

### b.     Counts One and Two Sufficiently Allege Schemes to Defraud

Rather than attack the Indictment's actual allegations, the defendant fabricates his own "theory of criminality" that is neither charged nor found in the actual Indictment. (Def. Mot. at 14). Ignoring the affirmative misrepresentations made and authorized by the defendant to potential donors, as alleged in the Indictment, the defendant contends that the Government is "criminalizing high overhead costs in fundraising, thereby criminalizing an entire industry." (*Id.* ("[I]t is not fraud to use those contributions and donations to sustain the apparatus which allows the organization to continue its mission")). But the facts and theory set forth by the defendant do not match the facts and statutory allegations set forth in the Indictment. The object of a motion to dismiss an

*indictment*, moreover, must be dismissal of an *indictment*—and not dismissal of some unpled theory.  Having aimed beyond the Indictment, the defendant's motion is entirely misplaced.[5]

The defendant apparently believes that Counts One and Two actually allege that the defendant paid too much money in overhead costs for the Piaro PACs and, as a result, paid too little money to support the PACs' missions.  (*Id.*).  Such allegations, the defendant argues, are inconsistent with *Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 615 (2003), in which the Supreme Court explained that it had previously held that "[f]raud may not be inferred simply from the percentage of charitable donations absorbed by fundraising costs."  The Supreme Court also explained, however, that its prior opinions "took care to leave a corridor open for fraud actions to guard the public against false or misleading charitable solicitations."  *Id.* at 616 (citing cases).  In any event, the defendant's argument fails because it is based on an inaccurate and partial reading of the Indictment.

Counts One and Two do not allege a "fraud . . . inferred simply from the percentage of charitable donations absorbed by fundraising costs," *id.*, nor do they "criminalize basic economic principles of fundraising (Def. Mot. at 14).  The Indictment alleges that the defendant made affirmative misrepresentations "designed to deceive the listener," thereby "suffic[ing] to establish fraud," consistent with *Madigan*.  Specifically, the Indictment alleges:

> At PIARO's direction, misrepresentations were made to donors that the
> PIARO PACs would, among other things, advance specific legislation,

---

[5] Similarly, Individual-1 argued in *United States v. Zeitlin*, 23 Cr. 419 (LAK), among other things, a fabricated theory of the Government's case, alleging that the Government was criminalizing high overhead costs—when it was not.  *United States v. Zeitlin*, 23 Cr. 419 (LAK), Dkt. 46 at 13-20 (S.D.N.Y. Nov. 30, 2023).  Judge Kaplan did not entertain the defendant's imagined theory of criminality and denied the defendant's motion to dismiss.  *Id.*, Dkt. 60.

educate lawmakers, and conduct and fund research, when PIARO did not
and did not intend to follow through on these representations.

(Indictment ¶ 1).  The Indictment details the misrepresentations made to donors by PAC.  (*Id.* ¶¶ 5-

15).  The Indictment also alleges that, pursuant to "100% Agreements," as referenced in the

Indictment, the defendant's fraud included solicitation calls to potential donors for money to

support a certain PAC when, during a "certain time period," none of the money went to the PAC

and 100 percent of the money went to the telemarketer.  (*Id.* ¶ 2).  The charged fraud is far from

being "based solely on the percentage of donations the fundraisers would retain, or their failure to

alert potential donors to their fee arrangements at the start of each telephone call."  *Madigan*, 538

U.S. at 617.

As background, the Indictment does reference each of the Piaro PACs' spending, which

includes the fact that the majority of funds raised went to telemarketing entities (*i.e.*, the

"Individual-1 Entities," as referenced in the Indictment).  (*Id.* ¶¶ 6, 8, 11, 14).  This pay structure

is relevant because it places the 100% Agreements and the relationship between the defendant and

the telemarketer in context, and because, taken together with the defendant's affirmative

misrepresentations, it shows that the defendant did not intend to fulfill his promises to donors.

Indeed, the Supreme Court has held that it is proper "to take fee arrangements into account in

assessing whether particular affirmative representations designedly deceive[d] the public."

*Madigan*, 538 U.S. at 622-23.  Separate and apart from the above pay structure, the Indictment

makes clear that the defendant is charged with defrauding donors through false and misleading

representations.  These allegations of "intentionally misleading statements" set forth in the

Indictment—as opposed to the defendant's imagined "theory of criminality"—is what matters on

a motion to dismiss.  Because these allegations are sufficient to state a violation of the charged

criminal offenses, the defendant's argument on this issue should be rejected.

> ### c.    Counts One and Two Sufficiently Allege the Deprivation of Money or Property

The Indictment sufficiently alleges that:

> ROBERT PIARO, the defendant, in connection with the conduct of telemarketing, knowingly having devised and intending to device a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises . . . [used interstate wires and the mails].

(Indictment ¶¶ 17, 19 (emphasis added)).  The "money and property," as repeatedly referenced in

the Indictment, includes donations from donors to the Piaro PACs, which plainly constitutes

"money" within the meaning of the mail and wire fraud statutes.

The defendant takes a "kitchen-sink" approach to claim that the Indictment does not

sufficiently allege "harm" and must be dismissed.  (Def. Mot. at 15).  Each of the defendant's

conclusory arguments should be rejected.

First, the defendant complains that the Indictment should have contained more facts that

"prove injury by a scheme to defraud."  (*Id.* at 17). As an initial matter, the Indictment need not

"prove" anything, including the elements of the offenses charged.  (*Id.* at 17).  The Indictment is a

charging document to be distinguished from a trial or a civil complaint.  The defendant's reference

to "convictions [that have been] reversed" (*id.* at 14) is irrelevant at this stage on a motion to

dismiss where the facts set forth in the Indictment "must be taken as true."  *Boyce*, 342 U.S. at 333

n.16.  Again, the Indictment satisfies the requirements set forth in Rule 7(c).  *See supra* Discussion

§ I.B.1.a.

21

Second, "actual reliance" by donors or potential donors on the defendant's misrepresentations is not an element of either mail or wire fraud. *Neder*, 527 U.S. at 24-25. And the defendant's assertion that the Indictment had to "contain . . . specific allegation[s] of harm to the donors" (Def. Mot. at 16) and that the "defendant contemplated actual harm that would befall his victim due to his deception" (*id.* at 15) has been widely rejected in this District and others. The Indictment is not required to allege the scheme intended to harm or injure particular donors. *See*, *e.g.*, *United States v. Fishbein*, No. 21 Cr. 296 (PAC), 2022 WL 1188424, at *3 (S.D.N.Y. Apr. 21, 2022) (rejecting argument that Indictment was deficient for failing to allege intent to harm because "Indictment need not allege [defendant] had an intent to harm"); *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *9 (S.D.N.Y. Jan. 18, 2017) ("The Court is aware of no authority suggesting that the Government is required to specifically allege contemplated harm in an indictment to sufficiently *state* a violation of [an analogous fraud statute, 18 U.S.C. § 1348], and it will impose no such requirement here.") (emphasis in original); *United States v. Riccio*, 43 F. Supp. 3d 301, 308 (S.D.N.Y. 2014) (rejecting argument that indictment "failed to properly allege the requisite specific intent to defraud . . . . because the Indictment tracks the language of the relevant statutes"). Further, as discussed above, the Indictment need not identify the specific wires or mail at issue. *See supra* at 16.

Third, the Indictment need not answer every factual question the defense may raise before the jury at trial. The defendant launches a slew of factual questions, claiming that the Indictment should have included specific details naming victims donors, and what "specific donors were dissatisfied with any specific instance of mail or wire communication," "[w]hat donors were

contacted?," "[w]hen were they contacted?, and "was "the donor told that each penny of their donation would go to a specific and/or designated purpose within the PAC or a specific charity?" (Def. Mot. at 17).  There is, understandably, no rule authorizing the dismissal of indictments because they did not include specific facts, answers, or witness statements demanded by a defendant.  A motion to dismiss an indictment is decided on the face of the charging instrument and its allegations—not on questions the defendant would like answered.  *See United States v. Zeitlin*, Dkt. 46 at 18 (S.D.N.Y. Nov. 30, 2023) (in defendant's motion to dismiss, which was denied by Judge Kaplan, the defendant asked various factual questions and argued that the "Indictment does not answer a single one" of the questions); *Zeitlin*, Dkt. 60 at 2 (Judge Kaplan's denial of the defendant's motion to dismiss); *see also United States v. Brewster*, No. 19 Cr. 833 (SHS), 2021 WL 3423521, at *5 (S.D.N.Y. Aug. 5, 2021) (denying defendant's motion to dismiss because allegations in indictment were sufficiently specific); *cf. United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("In evaluating a motion to dismiss, the Court 'accept[s] as true all of the allegations of the indictment.'").

Fourth, the defendant advances a "benefit of the bargain" argument, relying on the "right to control theory" of wire fraud that the Supreme Court recently invalidated in *Ciminelli v. United States*, 143 S. Ct. 1121 (2023).  In doing so, the defendant relies on *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007), and related cases, which concern buyer-seller relationships where the

alleged victim (the buyer) still received the benefit of his or her bargain, despite any arguably fraudulent misrepresentations made by the defendant (the seller).[6]

But the right to control theory of wire fraud, *Shellef*, and *Regent Office* are inapplicable here, where the Indictment does not allege the "right to control" theory of property or deception in contract negotiations. The Indictment instead alleges a straightforward scheme to deprive victims—here, donors—of money based on material misrepresentations and omissions about how their donations would be spent. The Indictment does not allege—or even suggest—that the fraud is based on a contractual relationship, an alleged deprivation of a donor's right to control his or her assets, or the mere deprivation of information relevant to the donor's decision-making. Rather, the Indictment alleges that the scheme involved affirmative misrepresentations of fact to donors in an effort to convince them to donate money as a result of those false and fraudulent representations.

---

[6] The alleged fraud in *Shellef*, for example, was that the defendants, who purchased certain controlled chemicals, defrauded the sellers of the chemicals by misrepresenting they planned to resell the chemicals domestically. *Id.* at 107. The indictment in that case did not allege "that there was a 'discrepancy between the benefits reasonably anticipated' and actual benefits received" by the suppliers as a result of the misrepresentations. *Id.* (citation omitted). In dicta, the Second Circuit expressed skepticism that the indictment adequately stated a claim based on an allegation that the defendant "induced [the victim] to sell additional amounts of [controlled chemicals] to [the buyer] would not have sold had it known that [the defendant] in fact intended to sell the product domestically." *Id.* at 109. As the Second Circuit reasoned, "[t]he jury . . . might have erroneously convicted [the defendants] even though it concluded that the defendants did not misrepresent an 'essential element' of the bargain . . . ." *Id.*; *see also United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970) (("[Defendant] did not attempt to deceive their prospective customers with respect to the bargain they were offering; rather, they gave a false reason for being able to offer the bargain. There was no substitution of merchandise contrary to the customer's understanding of the offer, and no 'quid pro quo of equal value' exchanged for the customer's money which did not meet his reasonable expectations").

The defendant in *United States v. Zeitlin* made similar arguments, which Judge Kaplan rejected in denying his motion to dismiss.  *Zeitlin*, Dkt. 60 at 2.  The defendant's challenge to a theory not present on the face of the Indictment thus fails.  *See United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 4194773, at *7 (S.D.N.Y. June 27, 2023) (rejecting motion to dismiss premised on argument that indictment alleged "right to control" theory "because each of those counts tracks the relevant statutory language and sufficiently alleges a scheme to obtain money or property"); *United States v. Runner*, No. 18 Cr. 578 (JS), 2023 WL 3727532, at *2 (E.D.N.Y. May 30, 2023) ("Defendant cannot use *Ciminelli* as a shield to prevent the Government from introducing the misrepresentations or omissions underlying the alleged scheme to defraud under the guise of construing those same deceptions as exclusively relevant to a victim's property interest [in] 'mere information' to render them unactionable.")

Finally, the remaining arguments by the defendant are questions of fact to be put before the jury.  For example, assuming there is an adequate evidentiary basis, the defendant is free to argue to the jury that the misrepresentations he made to donors and potential donors were simply "mission statements."  (Def. Mot. at 16).

### d.    Counts One and Two Sufficiently Allege Materiality

The defendant separately claims Counts One and Two fail to allege materiality.  But contrary to the defendant's premise, the Indictment "need not explicitly allege materiality, which is subsumed in the concept of fraud." *Zeitlin*, Dkt. 60 at 2 (citing *United States v. Klein*, 476 F.3d 111, 113 (2d Cir. 2007)).  The defendant cites *Neder* (Def. Mot. at 18), but although *Neder* held that "materiality of falsehood" is an element of the bank, mail, and wire fraud statutes, it did not

similarly hold that materiality must be expressly alleged in an indictment. *Neder*, 527 U.S. at 25. To the contrary, in *Neder*, the Supreme Court found that the concept of materiality is essentially subsumed within the definition of fraud, and can be inferred as a required element when fraud is charged. Consistent with *Nedar*, the Second Circuit has recognized that "[i]f materiality can be inferred to be an element of criminal fraud because of the well-understood meaning of 'fraud' as a legal term, an allegation of materiality can be inferred from the use of the word fraud in the indictment." *Klein*, 476 F.3d at 113. An indictment, therefore, sufficiently alleges materiality by alleging the existence of a scheme to defraud. *Id*. at 113-14.

Counts One and Two satisfy this standard. Each count alleges a "scheme . . . to defraud," which necessarily encompasses allegations of materiality. (Indictment ¶¶ 17, 19). In addition, the background allegations, which are incorporated by reference into the statutory allegations for Counts One and Two, contain multiple uses of variations of the term "fraud" that further provide sufficient notice that fraudulent—*i.e.*, material—pretenses and representations were used in the course of the scheme. They refer to "false and misleading representations" made to donors, and further detail that misleading and false information by PAC. (*Id.* ¶¶ 1, 5-15). The Indictment also repeatedly alleges that the defendant "did not otherwise materially fulfill the representations made to donors." (*Id.* ¶¶ 6, 8, 11, 14).

The Indictment's repeated descriptions of the defendant's conduct as perpetrating a fraud encompass the concept of materiality and satisfy any potential requirement to plead such an element in the Indictment. *See*, *e.g.*, *United States v. Brewster*, No. 19 Cr. 833 (SHS), 2021 WL 3423521, at *5 (S.D.N.Y. Aug. 5, 2021) (rejecting "argument that the indictment is deficient for

failure to specifically allege that the misrepresentations made to the victims . . . were material" where "the alleged scheme to defraud necessarily involves material misrepresentations"); *United States v. Culligan*, No. 04 Cr. 305A (RJA), 2007 WL 3232484, at *2 (W.D.N.Y. Nov. 1, 2007) (denying motion to dismiss indictment and adopting magistrate judge's holding that "[t]he lack of an expressed allegation of 'materiality' does not cause the indictment to be defective" because "the use of the words 'scheme or artifice to defraud' in the statute 'incorporate materiality'"); *United States v. Stewart*, 151 F. Supp. 2d 572, 584 (E.D. Pa. 2001) (denying motion to dismiss indictment and rejecting argument that materiality had to be explicitly pled in mail and wire fraud indictment because "fraud" is understood at common-law to "clearly encompass[] the notion of materiality.").

#### e.      Counts One and Two Sufficiently Allege Venue and Timeliness

The Indictment sufficiently alleges that venue is proper in the Southern District of New York.  (Indictment ¶ 17 ("wire communications" were sent and received "to and from the Southern District of New York and elsewhere"); ¶ 19 ("mail containing such misrepresentations to donors and potential donors" were sent "in the Southern District of New York and elsewhere")).  The defendant's claim that the Indictment contains "insufficient facts to determine venue" rests on the Government's burden of proof at trial rather than the four corners of the Indictment.  (Def. Mot. at 20).  And while the defendant claims that under the "substantial contacts analysis," venue is not proper in this District, he does not move to dismiss the Indictment for lack of venue.  Nor could he, because venue for mail and wire fraud is proper "where a wire [or mail] in furtherance of the scheme begins its course, continues or ends."  *United States v. Rutigliano*, 790 F.3d 389, 397-98 (2d Cir. 2015) (internal quotation marks and citations omitted).  In any event, the Indictment

alleges that the charged crimes occurred in the Southern District of New York and elsewhere (Indictment ¶¶ 17, 19), which sufficiently alleges venue at this stage.  *United States v. Ohle*, 678 F. Supp. 2d 215, 231-32 (S.D.N.Y. 2010) ("Government need only alleged that criminal conduct occurred within the venue, 'even if phrased broadly and without a specific address or other information,' in order to satisfy its burden with regard to pleading venue.") (citing *United States v. Bronson*, No. 05 Cr. 714 (NGG), 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007); and *United States v. Szur*, No. 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998)).

The charges against the defendant are also timely.  The statute of limitations for each of the proposed offenses is five years.  18 U.S.C. § 3282.  The time period for each of the Counts is from at least in or about February 2017 through at least in or about December 2022 (Indictment ¶¶ 17, 19), and the date the Indictment was returned (August 15, 2023) clearly falls within the applicable time period.

### f.    Counts One and Two Sufficiently Allege Intent

The defendant argues that the Indictment does not sufficiently allege intent because, based on the defendant's narrative, as a factual matter, "[t]here was no intend to defraud anyone."  (Def. Mot. at 19).  The defendant claims that he did not form "conscious intent to defraud any donors," but rather, relied on others.  The defendant's arguments "amount essentially to a sufficiency of the evidence challenge, which is inappropriate at this stage of a criminal case."  *United States v. Gatto*, 295 F. Supp. 3d 336, 350 (S.D.N.Y. 2018).  The defendant is not entitled to dismissal of a properly returned Indictment because he disagrees with its allegations or believes it should answer a series of questions that go to issues of factual guilt or innocence.  Rule 7, not the defendant, sets forth

the requirements for what must be contained in an Indictment.  Counts One and Two satisfy those requirements by alleging "the elements of the offense[s] charged[.]"  *Hamling v. United States*, 418 U.S. 87, 117 (1974).

### 2.      The Counts Are Not Duplicitous and the Defendant Is Not Prejudiced

The defendant argues that the Indictment should be dismissed because Counts One and Two are impermissibly duplicitous on the theory that each count actually alleges many separate counts of the same crime, each based on a separate wire or mail, rather than one crime. (Def. Mot. at 22-23).  This argument is unavailing, however, because each count alleges a single scheme and the defendant can point to no cognizable prejudice from their form as alleged—indeed, he only benefits from the consolidation of counts.

Under well-settled law in this Circuit, counts of mail and wire fraud are not duplicitous if they are part of a single continuing scheme.  *See*, *e.g.*, *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("[T]his court has long held that 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)); *United States v. Moloney*, 287 F.3d 236, 241 (2d Cir. 2002) (one count of money laundering alleging a series of financial acts); *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (combining 50 mailings into one count of mail fraud); *United States v. DiScala*, No. 14 Cr. 399, 2018 WL 1187394, at *27 (E.D.N.Y. Mar. 6, 2018) (rejecting the argument "that each single transaction of securities fraud must be charged separately," and emphasizing that "the approved practice in the Second Circuit, where indictments will charge both securities fraud and a

conspiracy to commit said fraud, allege a starting and ending date in the securities fraud count, and allege the means of committing the fraud"). Here, the defendant's misrepresentations on websites, made on donation calls, and conveyed by mail were clearly part of "a single continuing scheme" to defraud donors in order to obtain their money. *See Zeitlin*, Dkt. 60 at 2 (citing cases).

The defendant concedes that the "'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" (*Id.* at 24 (quoting *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013)). But the defendant contends that because he was not charged with a conspiracy, he was not charged with a single continuing scheme. (*Id.* ("Unlike the defendant in *Vilar*, Mr. Piaro has not been charged with conspiracy but has been charged with the alleged overt act(s) of mail and wire fraud.")).[7] But the single continuing scheme need not be a conspiracy. *See Olmeda*, 461 F.3d at 281. In *Vilar*, cited by the defendant, the defendants were charged with conspiracy as well as substantive offenses. 729 F.3d at 69.

In support of his duplicity claim, the defendant again asserts that the Indictment lacks "specificity", it fails "to allege a competent scheme to defraud," and it fails to provide sufficient "notice" of the charges. (Def. Mot. at 24-25). These arguments, however, do not pertain to duplicity, and are addressed above with respect to the sufficiency of the Indictment under Rule 7. *See supra* Discussion § I.B.1.

---

[7] Contrary to the defense's assertion, the defendant has not been charged with "overt acts" because he has not been charged with conspiracy. (Def. Mot. at 24).

The defendant also argues that he suffers prejudice from the Indictment as charged because he would be "sentenced based on the assumption that an aggregated total amount of money would be used in determining a sentence, as opposed to amount(s) linked to specific transactions." (Def. Mot. at 25). The loss amount for purposes of the applicable Guidelines range under the U.S. Sentencing Guidelines is, of course, not a question for the jury, but a question for the Court should the case proceed to sentencing. To the extent there are relevant factual disputes about the loss amount, if needed, the Court can order a hearing under *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

The defendant's "double jeopardy concerns" are similarly unavailing. (Def. Mot. at 25). As noted, Count One charges only a single count of wire fraud, so there can be no ambiguity at all on this score: every wire in furtherance of the charged scheme "supports" the sole charge of wire fraud. *See Margiotta*, 646 F.2d at 732-733 (multiple mailings properly charged under single count); *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) ("It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The same is true for Count Two with respect to use of the mails. The defendant has received more than sufficient notice as to the nature of the charged schemes to defraud, including the fact that they involved the Piaro PACs.

The defendant simply has not established any prejudice he will suffer from the Indictment in its current form. In fact, if anything, the single counts of wire and mail fraud against the

defendant may well benefit him when compared to the potentially "thousands" of counts of wire fraud and mail fraud that may be appropriate.  (Def. Mot. at 24)  As the Second Circuit has observed, "duplicity may actually inure to a defendant's benefit by 'limiting the maximum penalties' he might face if he were charged and convicted on separate counts for what amounts to a single scheme." *Olmeda*, 461 F.3d at 281.  Being charged with a single count of wire fraud also provides the defendant with the benefit of avoiding "the portrayal to the jury as the perpetrator of [multiple] crimes." *Id*. (citation omitted).  In sum, because the defendant has suffered no prejudice, his motion to dismiss Counts One and Two as duplicitous should be denied.

### 3.     The Government's Prosecution of the Defendant Is Proper

The defendant's motion to dismiss the Indictment on the grounds of selective prosecution should be denied because it is based on a specious and conclusory claim that the Government charged the defendant because he is allegedly "conservative," a "Republican," and a "Veteran who supports conservative politicians and causes." (Def. Mot. at 27).  Here, there is no evidence that the defendant has been "singled out" for prosecution because of his political beliefs and that the Government's prosecution of the defendant has been invidious or in bad faith.  *Fares*, 978 F.2d at 59.  The defense's motion largely rests on the defendant's own stereotypes about causes and political affiliations, and his own claim, as set forth in his motions, that he is a conservative Republican.  Because the defendant has failed to make the requisite prima facie showing of selective prosecution, his motion should be denied.  *See id.* (affirming district court's denial of defendant's motion where he failed to make a prima facie showing of selective prosecution); *United States v. Al Jibori*, 90 F.3d 22, 24 (2d Cir. 1996) (same).

Further, instead of identifying others similarly situated to the defendant whom the Government has not charged, the defendant points to Individual-1, whom the Government did, in fact, charge. (Def. Mot. at 26-27). The defendant also alleges that he should not be blamed for his fraudulent conduct—and that his conduct is the fault of others, including Individual-1's employees. The defendant's intent, however, is a question of fact for the jury. And Individual-1's employees are certainly not similarly situated to the defendant who, among other things: (1) created, registered, controlled, and operated the Piaro PACs; (2) admitted to law enforcement in the presence of counsel that he edited, authorized, and approved of content about the Piaro PACs on their websites and mailings, and in their call scripts, including how the Piaro PACs would spend donations; and (3) was responsible for the Piaro PACs' activities. *See, e.g.*, *United States v. Avenatti*, 433 F. Supp. 3d 552, 573 (S.D.N.Y. 2020) (rejecting selective prosecution claim where an uncharged individual involved in the charged conduct was "not similarly situated").

There is thus no evidence whatsoever that the defendant has been "singled out" for prosecution. The defendant was charged because he committed federal crimes. His attempt to politicize this prosecution should be rejected and his motion denied.

## II.   THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

As an alternative to his motion to dismiss the Indictment, the defendant moves for a bill of particulars. The defendant's motion should be denied because a bill of particulars is neither warranted nor necessary. The Government has already provided the defendant with ample notice of the crimes with which he is charged, including through the 12-page speaking Indictment, multiple lengthy and detailed search warrant affidavits, a 20-page report of the defendant's own

statements to law enforcement, and pre-Indictment conversations between the parties about the

defendant's conduct.  The Government has also made itself available to the defense to meet-and-

confer about the defense's discovery questions.  The defendant has not, and cannot, establish that

he is entitled to a bill of particulars or that the various forms of detailed notice that the Government

has provided are insufficient.  His motion should be denied.

### A.      Applicable Law

In certain cases, if necessary and at the Court's discretion, Rule 7(f) of the Federal Rules

of Criminal Procedure permits the Court to direct the Government to file a bill of particulars.  "[A]

bill of particulars, however, is <u>not necessary</u> where the government has made sufficient disclosures

concerning its evidence and witnesses by other means."  *United States v. Walsh*, 194 F.3d 37, 47

(2d Cir. 1999) (emphasis added) (affirming denial of request for a bill of particulars where the

Government adequately informed the defendant of the nature of the charges against him through

discovery).  That is, "if the defendant has been given adequate notice of the charges against [him]

and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required

to disclose additional details about its case."  *United States v. Henry*, 861 F. Supp. 1190, 1197

(S.D.N.Y. 1994).

Ultimately, "[i]n deciding a motion for a bill of particulars, '[t]he important question is

whether the information sought is necessary, not whether it is helpful.'"  *United States v. Triana-*

*Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (quoting *United*

*States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)).  A bill of particulars is not a general

investigatory tool for the defense.  *See United States v. Salazar*, 485 F.2d 1272, 1277-78 (2d Cir.

1973).  Nor is it a device to compel disclosure of the Government's evidence or legal theory prior to trial.  *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974).  Rather, the sole purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to (1) enable him to prepare his defense; (2) avoid unfair surprise at trial; and (3) preclude a second prosecution for the same offense.  *See Wong Tai v. United States*, 273 U.S. 77, 80-82 (1927).

There are several important reasons why "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks omitted); *accord United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004).  Because "a bill of particulars confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case."  *Henry*, 861 F. Supp. at 1197. *See also United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) (recognizing that "care must be taken" because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches.").  The Government's provision of particulars separately creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case."

*Henry*, 861 F. Supp. at 1197.  For this reason, "the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented."  *United States v. Sindone*, No. 01 Cr. 517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002).

**B.     Discussion**

The Court should reject the defendant's request for a bill of particulars because it is neither warranted nor necessary, and such disclosure will prejudice the Government.  As described above, the charges against the defendant are straightforward and well-pled: the defendant controlled and operated the Piaro PACs and defrauded donors through telemarketing calls, websites, and mail, each of which misrepresented how donations would be spent.  (Indictment ¶¶ 1-2, 5-15, 17, 19). The Indictment sets forth, in far more detail than required, the manner by which the defendant defrauded donors, including the misrepresentations made to donors for each of the Piaro PACs. (*Id.* ¶¶ 5-15).   The Indictment articulates, among other things, the false and misleading representations to donors at issue (*id.*), and the time period during which those false and misleading misrepresentations were made (*id.* ¶¶ 17, 19).  In addition, through lengthy and thorough search warrant affidavits, the Government has provided further detail relating to the defendant's offense conduct.   The defendant also participated in an extensive voluntary interview with the Government, in the presence of counsel, during which time the Government showed the defendant documents.  The Government has provided the defense with a 20-page report summarizing the interview.

In these circumstances, the defendant cannot plausibly claim that the Indictment, supplemented by the Government's discovery and additional disclosures as detailed above, *see supra* Background § III, lacks sufficient detail to allow him to plead double jeopardy against a subsequent prosecution for the same acts, or to understand the acts of which he is accused, as is required in order to be entitled to a bill of particulars. *See, e.g.*, *United States v. Ferrarini*, 9 F. Supp. 2d 284, 299 (S.D.N.Y. 1998) (denying bill of particulars where "indictment alone . . . discloses sufficient information to inform the defendants adequately of the charges against them").

Given the fulsome discovery and disclosures the Government has already provided, the defendant effectively seeks to impermissibly use a bill of particulars not because it is necessary to prepare a defense, but rather to compel the Government to provide "a preview of the evidence" and "the theory of the government's case." *United States v. Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989). The defendant's request amounts to an "ill-disguised attempt[] at general pre-trial discovery" that is not the function of a bill of particulars. *Torres*, 901 F.2d at 234.

In addition, given the details already provided concerning the allegations in the Indictment, at this stage, the broad categories of information the defendant seeks are not actually necessary for the defendant to prepare a defense. Indeed, in this Circuit, motions like the defendant's are routinely denied. *See, e.g.*, *Samsonov*, 2009 WL 176721, at *2 (in fraud case charging both conspiracy and substantive offenses, denying motion for bill of particulars seeking "the specific false information and material omissions used to procure the mortgages and other loans at issue in [the] case"); *United States v. Earls*, No. 03 Cr. 0364(NRB), 2004 WL 350725, at *4 (S.D.N.Y. Feb. 25, 2004) (in fraud case, denying request for bill of particulars specifying, *inter alia*, "the

precise nature of certain allegedly materially false representations and misleading omissions");

*United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404, at *7 (D. Conn. Aug. 12, 1996)

(denying bill of particulars request demanding "the manner in which the financial statements [the

defendant] submitted to insurance companies and state agencies were false").

The defendant's request for a bill of particulars is principally based on the "voluminous

discovery." (Def. Mot. at 28-29.) In this case, however, the defendant has ample time to review

discovery, such that "the discovery volume alone simply does not necessitate a bill of particulars."

*Wey*, 2017 WL 237651, at *21 (citing cases); *see also United States v. Percoco*, No. 16 Cr. 776

(VEC), 2017 WL 6314146, at *21 (S.D.N.Y. Dec. 11, 2017) (rejecting request for bill of

particulars premised on volume of discovery because discovery was "accompanied by additional

guidance that, in conjunction with the detail in the Indictment and Complaint, allows the

Defendants to conduct a focused review of the production"); *United States v. Mandell*, 710 F.

Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying request for particularization of alleged

misrepresentations where the indictment was 34 pages long and Government had provided

voluminous, organized discovery and noting that the "mere existence of 'mountains of documents'

does not entitle" a defendant to a bill of particulars). Under these circumstances, a bill of

particulars is neither necessary nor warranted, and the defendant's motion should be denied.[8]

---

[8] With respect to the defendant's notice claim regarding Individual-1. The defendant knows the identity of Individual-1 and the Government has produced significant discovery pertaining to Individual-1 and his entities.

### III.   THE DEFENDANT'S MOTION FOR GRAND JURY TESTIMONY AND EXHIBITS SHOULD BE DENIED

The defendant has failed to make any showing of the "particularized need" required for the exceptional relief requested (*i.e.*, the disclosure of grand jury transcripts and exhibits).   The defendant's motion here is a transparent attempt to effectively obtain Jencks Act material, 18 U.S.C. § 3500, and trial exhibits well in advance of trial—indeed, before a trial has even been scheduled—should be denied.

#### A.   Applicable Law

Federal courts have long recognized "that proceedings before a grand jury shall generally remain secret." *Bourne v. United States*, No. 21-2497, 2023 WL 3102700, at *1 (2d Cir. 2023) (quoting *In re Biaggi*, 4787 F. 2d 489, 491 (2d Cir. 1973)); *see also Douglas Oil Co. of Calif. V. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979).   "This time-honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 28 (2d Cir. 1981).   This is in part because "[t]he grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also Rehberg v. Paulk*, 566 U.S. 356, 374 (2012).

In certain limited circumstances, under Rule 6(e)(3)(E), a court may authorize disclosure of grand jury transcripts, including "(i) preliminary to or in connection with a judicial proceeding;" or "(ii) at the request of a defendant who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).   For a court to authorize disclosure under Rule 6(e)(3)(E), the defendant must demonstrate a

"particularized need" for disclosure that is "(1) necessary to avoid a 'possible injustice in another judicial proceeding'; (2) 'greater than the need for continued secrecy'; and (3) 'structured to cover only materials so needed." *Bourne*, 2023 WL 3102700, at 1 (quoting *Douglas Oil*, 441 U.S. at 222-23 & n.12); *see also Baynes v. Ruderfer*, 234 F. Supp. 3d 574, at 577-78 (S.D.N.Y. 2017) (citing cases).

The defendant carries the burden of showing "particularized need," and his showing must be "substantial." *Baynes*, 234 F. Supp. 3d at 577-78.  Indeed, "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *Bourne*, 2023 WL 3102700, at 2; *see also United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), abrogated on other grounds by *United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010) (same).

### B.      Discussion

The defendant has failed to articulate a particularized need—let alone any need—for disclosure of grand jury transcripts and corresponding referenced exhibits.  Instead, the defendant offers wholly unsupported speculation that simply does not satisfy even one prong of the three-prong test for disclosure of grand jury transcripts.  Specifically, the defendant has failed to carry his substantial burden of showing that there is a "particularized need" for disclosure of grand jury transcripts in order to avoid "possible injustice" in another proceeding, that the need outweighs the public's long-protected interest in grand jury secrecy, and the disclosure is tailored to the need. *Bourne*, 2023 WL 3102700, at 1.

The defendant largely rests his motion on his meritless attack on the sufficiency of the Indictment.  (Def. GJ Mot. at 6-7).  For the reasons set forth above, the Indictment is sufficiently

pled, and sets forth, in detail, the misrepresentations the defendant made to donors in order to raise money for his PACs.  *See supra* Discussion § I.B.  In addition, as discussed above, the defendant fabricates a "theory of criminality" relating to "high overhead costs," and argues that he needs the grand jury transcripts in order to confirm that his imagined theory of criminality was not presented to the jury.  (Def. GJ Mot. at 6-7).  But the Indictment nowhere contains the defendant's fabricated theory, *see supra* Discussion § I.B.1.b., and there is accordingly no reason to suspect that it or any "erroneous" were presented to the grand jury (Def. GJ Mot. at 6).  Finally, the defendant suggests that there was "perjured testimony or misleading evidence" (*id.* at 3), but offers no basis for this conclusory and unsupported allegation.

In *Bourne*, the Second Circuit held that the District Court correctly found that the defendant had not carried his burden of demonstrating a "particularized need" for disclosure of grand jury material to avoid a "possible injustice in another proceeding" because the defendant argued "in a conclusory fashion that the requested materials would show that the government engaged in misconduct by 'read[ing] a prior grand[-]jury transcript' into the record."  *Bourne*, 2023 WL 3102700, at 2.  Here too, the defendant has failed to set forth anything other than speculation and unsupported conclusions.  He has failed to show that there is a particularized need that outweighs the public's interest in grand jury secrecy, and he has failed to tailor his request to address that need.  Instead, the defendant's motion is a transparent attempt to obtain witness statements far in advance of trial.  The longstanding reasons for grand jury secrecy—including the public's interest in protecting the identities of witnesses and their cooperation with the Government—easily outweigh the defendant's interest in obtaining witness statements and trial exhibits to which he is

not entitled at this stage of the proceeding under the Jencks Act, 18 U.S.C. § 3500.  *See United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) (granting mandamus and holding that "a District Court's power to order pretrial disclosure is constrained by the Jencks Act."); *United States v. Morgan*, 690 F. Supp. 2d 274, 285-86 (S.D.N.Y. 2010) ("Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material" and "have repeatedly refused to compel disclosure of impeachment or *Giglio* material well in advance of trial."); *see also United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990) (noting that "Fed. R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses" or their statements).

## IV.  THE DEFENDANT'S MOTION FOR LEAVE TO FILE SUBSEQUENT MOTIONS SHOULD BE DENIED WITHOUT PREJUDICE

The Court should deny the defendant's effectively wholesale request to file additional pretrial motions should he later identify them.  Permitting the defendant with the ongoing ability to file pretrial motions at his own discretion would be inefficient and may cause unnecessary burdens on the Court and the Government and delays of the proceeding.  Instead, the Court should determine, on a case-by-case basis, whether it will consider any potential future motions by the defendant.

## **CONCLUSION**

For the foregoing reasons, the defendant's pretrial motions to dismiss the Indictment, for a bill of particulars, for grand jury transcripts, and for leave to file additional motions should be denied.

Dated: New York, New York
       May 6, 2024

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York


                               By:  /s Jane Kim
                                    Jane Kim
                                    Daniel H. Wolf
                                    Rebecca Dell
                                    Assistant United States Attorneys
                                    Tel.: 212-637-2038 / 2337 / 2198